Jordon Harlan, Esq. (CA #273978)
HARLAN LAW, P.C.
1245 Island Avenue
San Diego, CA 92101
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

Michael K. Johnson, Esq. (MN #0258696)
mjohnson@johnsonbecker.com
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (MN #0397289)
akress@johnsonbecker.com
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801

*Attorneys for Plaintiff Timothy Kualii Kahae*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – San Francisco Division

| | |
|---|---|
| **TIMOTHY KUALII KAHAE**, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>**HITACHI KOKI U.S.A., LTD.**, a Georgia Corporation, and **KOKI HOLDINGS CO., LTD.**, a Japanese Company,<br><br>    **Defendants.** | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, **TIMOTHY KUALII KAHAE** (hereafter referred to as "Plaintiff" or "Timothy"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN LAW, P.C.**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **HITACHI KOKI U.S.A., LTD**. ("Hitachi") and Defendant **KOKI HOLDINGS CO., LTD** ("Koki Holdings") (collectively referred to as "Defendants") and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendants design, manufacture, market, import, distribute, and sell power tools and hardware, including the subject "Hitachi Pneumatic Nailer," which specifically includes the Model Number NR83A (hereinafter referred to as "nailer(s)") that is at issue in this case.

2. On or about November 15, 2021, the subject nailer misfired during its normal, foreseeable use, causing two nails to be shot at once and resulting in the second nail ricocheting off the first nail and lodging itself in Timothy's tongue and head. As a result, Timothy sustained significant, life altering, oral trauma and facial injuries.



CT of Timothy's skull, November 15, 2021.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

3. On or about June 12, 2014, Defendants recalled[1] more than 25,000 nailers, which, upon information and belief, includes the subject nailers, because "[t]he pneumatic nailers can jam and override the safety switch that permits only one nail to fire at a time, posing an injury risk."[2] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

4. Defendants manufactured these nailers, including the subject nailer, with a defect that made them inherently dangerous to consumers, including Timothy.

5. As a direct and proximate result of Defendants' collective conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

6. Consequently, Plaintiff brings this case as a direct and proximate result of the strict products liability and negligence of Defendants. Plaintiff also seeks an award of punitive damages for Defendants' deliberate disregard for the rights or safety of others.

## PLAINTIFF TIMOTHY KUALII KAHAE

7. Timothy is a resident and citizen of the City of San Francisco, County of San Francisco, State of California and is 28 years old.

8. On or about November 15, 2021, Timothy suffered serious and substantial oral trauma and facial injuries as the direct and proximate result of the nailer jamming and overriding the safety switch, causing it to misfire two nails at once during the normal, directed use of the nailer.

---

[1] *See* https://www.cpsc.gov/Recalls/2014/Hitachi-Koki-Recalls-Pneumatic-Nailers (last accessed November 2, 2023) A copy of the Safety Recall Report is attached hereto as Exhibit A.
[2] *Id.*

## DEFENDANTS HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD

9. Defendants design, manufacture, market, import, distribute, and sell power tools and hardware, including the subject "Hitachi Pneumatic Nailer," Model Number NR83A that is at issue in this case.

10. Defendant Hitachi is, and was at the time this action was commenced, a corporation existing under the laws of Delaware with its principal place of business located at 1111 Broadway Avenue, Braselton, GA, 30517, and does business in all 50 states. Defendant Hitachi is a corporate citizen of Delaware and Georgia. Defendant Hitachi may be served with process by servicing its registered agent, C T Corporation System, 289 S Culver Street, Lawrenceville, GA, 30046-4805.

11. At all times relevant, Defendant Hitachi substantially participated in the design, manufacture, marketing, distribution and sale of the subject nailer, which caused Plaintiff's injuries and damages.

12. Defendant Koki Holdings is, and was at the time this action was commenced, a corporation existing under the laws of the Country of Japan with its principal place of business located at Shinagawa Intercity Tower A, 18th Floor, 15-1, Konan 2-chome, Minato-ku, Tokyo 108-6018, Japan, and does business in all 50 states. For purposes of determining diversity jurisdiction under § 1332(c)(1), Koki Holdings closely resembles a corporation formed under United States of America. Defendant Koki Holdings may be served via *the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters* ("Hague Service Convention").

13. At all times relevant, Defendant Koki Holdings substantially participated in the design, manufacture, marketing, distribution, and sale of the subject nailer, which caused Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15. This Court has personal jurisdiction over this case and the Defendants in that Defendants regularly and persistently engage in the business of marketing distributing, advertising, and/or selling their products, including the subject nailer, in the state of California and for use by consumers in the State of California, and has transacted and conducted business within the State of California that relates to the allegations in this Complaint.

16. Defendant expected or should have expected its acts to have consequences within the State of California and derived substantial revenue from interstate commerce related to nailers, including the subject nailer, sold and used in the State of California.

17. Defendant purposefully availed itself of the privilege of conducting activities within the State of California, thus invoking the benefits and protections of its laws.

18. At all times relevant herein, Defendant conducted substantial business in California and purposely availed itself of the privilege of doing business in California by knowingly marketing, distributing, selling, and shipping products, including pneumatic nailers like the subject nailer, into California for sale to consumers in this state. Further, this action arises from Defendants' conduct directed toward California, arises from a tort committed in whole or in part within California, relates to Defendants' regular and persistent manufacture, supply, and sale of nailers, and resulted in injuries in California. Therefore, personal jurisdiction is proper as to the Defendants.

19. Jurisdiction over the Defendants is also proper under the due process

provisions of the California and United States constitutions. *See e.g. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff was injured in the State of California, was treated by California medical providers, and a substantial part of the events or omissions giving rise to the claim occurred in the State of California.

21. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of California and intentionally availed themselves of the markets within California through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

22. Defendants design, manufacture, market, import, distribute, and sell power tools and hardware, including the subject nailer.

23. On or about November 15, 2021, Timothy began work. As an apprentice carpenter at Plant Construction Company, L.P., it was his job to nail the plywood on the floor down in 1 ½ inch increments.

24. At around 10 a.m., Timothy took a twenty-minute break before returning to the fourth floor of the construction site to continue nailing down the plywood on the floor. He turned the air compressor back on. Once the compressor was at 150-200 PSI, Timothy grabbed the nail gun and began nailing once more.

25. Timothy had nailed 75% of a sheet of plywood when the nail gun shot out two nails at once; resulting in the second nail hitting the prior nail causing it to ricochet off the nail and lodge itself through his tongue and into the base of Timothy's skull.

26. Timothy went into shock and did not realize what happened; he laid the gun on the ground and walked downstairs to report the incident, bleeding as he went.

27. It became immediately apparent to his co-workers that Timothy required professional medical treatment. He was taken to a Nearby Standford Health Clinic to receive emergency medical treatment.

28. Timothy was evaluated by both the ears, nose, and throat ("ENT") and neurosurgery department who determined that surgical intervention would be required. Unfortunately, Timothy would have to wait until *the next day* to have the nail removed.

29. Timothy would ultimately undergo surgery for: 1) the removal of nasal foreign body; 2) repair to his tongue laceration; repair to his palate laceration; 3) a septoplasty; 4) a left maxillary antrostomy with tissue removal; 6) a left total ethmoidectomy; 7) a left nasal floor free mucosal graft to repair anterior skull base defect; and 8) a mandibular/maxillary fracture closed reduction.

30. As a result of the incident, Timothy incurred more than $400,000.00 in medical bills and almost $30,000.00 in lost wages.

31. In addition, Timothy continues to experience numbness in his tongue where the nail went through it, which has led to stuttering. Timothy also is permanently scarred on his lower lip from the nail that the defective nail gun shot into his head. These needless injuries will continue to plague Timothy for the rest of his young life.

32. On or about June 12, 2014, Defendants recalled[3] more than 25,000 nailers, which includes the subject nailers, because "[t]he pneumatic nailers can jam and override the safety switch that permits only one nail to fire at a time."[4]

33. Plaintiff used the subject nailer for its intended purpose and did so in a manner that was reasonable and foreseeable by Defendants.

---

[3] *See* Exhibit A.

[4] *Id.*

7
COMPLAINT AND DEMAND FOR JURY TRIAL

34. Defendants' nailers possess defects that make them unreasonably dangerous for their intended use by consumers because of their propensity to jam and override the safety switch, causing two nails to fire at once; just as it did to Timothy.

35. Defendants knew or should have known that their nailers possessed defects that posed a safety risk to Plaintiff and the public. Nevertheless, Defendants ignored and/or concealed their knowledge of the nailers' defects from the general public and continued generating a substantial profit from the sale of their nailers.

36. As a direct and proximate result of Defendants' concealment of such defects, their failure to warn consumers of such defects, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous nailer, which resulted in significant and painful bodily injuries.

37. Consequently, the Plaintiff in this case seeks damages, including punitive damages, resulting from the use of Defendants' nailer as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## FIRST CAUSE OF ACTION
## **STRICT PRODUCTS LIABILITY**

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD., ALLEGES AS FOLLOWS:

38. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

39. At the time of Plaintiff's injuries, Defendants' nailers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

40. Defendants' nailers were in the same or substantially similar condition as when they left the possession of the Defendant.

41. Plaintiff did not misuse or materially alter the nailer.

42. The nailers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

43. Further, a reasonable person would conclude that the possibility and seriousness of harm outweigh the burden or cost of making the nailers safe. Specifically:

   a. The nailers designed, manufactured, sold, and supplied by Defendants were defectively designed and manufactured and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the nailers, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendants failed to warn and place adequate warnings and instructions on the nailers;

   e. Defendant failed to adequately test the nailers; and

   f. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the nailer from jamming and misfiring.

44. At the time of Plaintiff's injuries, Defendants' nailers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

45. Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## SECOND CAUSE OF ACTION

## <u>NEGLIGENT PRODUCTS LIABILITY</u>

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD., ALLEGES AS FOLLOWS:

46. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

47. Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective nailers that are reasonably safe for its intended uses by consumers, such as Plaintiff.

48. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of their nailers in that Defendants knew or should have known that said nailers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

49. Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of their nailers in that, among other things, it:

   a. The nailers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential injuries resulting from the product drastically outweigh any benefit that could be derived from its

normal, intended use;

c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the nailers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendants failed to warn and place adequate warnings and instructions on the nailers;

e. Defendants failed to adequately test the nailers;

f. Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury posed by their nailers; and

g. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented Plaintiff's injuries and damages.

50. Despite the fact that Defendants knew or should have known that the head of the nailers could unexpectedly detach, it continued to sell their nailers, including the subject nailer, to consumers, including Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

PLAINTIFF, FOR A THIRD CAUSE OF ACTION AGAINST HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD., ALLEGES AS FOLLOWS:

51. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

52. At the time Defendants marketed, distributed, and sold their nailers to Plaintiff in this case, Defendants warranted that their nailers were merchantable and fit for the ordinary purposes for which they were intended.

53. Members of the consuming public, including consumers such as Plaintiff, were intended third-party beneficiaries of the warranty.

54. Plaintiff reasonably relied on Defendants' representations that their nailers were an effective and safe tool for nailing, and were equipped with a "safety switch".

55. Defendants' nailers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

56. Plaintiff used the nailer with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of nailing.

57. Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants for and punitive damages according to proof, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

PLAINTIFF, FOR A FOURTH CAUSE OF ACTION AGAINST HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD, ALLEGES AS FOLLOWS:

58. Plaintiff incorporates by reference each preceding and succeeding

paragraph as though set forth fully at length herein.

59. Defendants manufactured, supplied, and sold their nailers with an implied warranty that they were fit for the particular purpose of efficiently and safely nailing materials.

60. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

61. Defendants' nailers were not fit for the particular purpose as a safe means of nailing, due to the unreasonable risks of bodily injury associated with its use.

62. Plaintiff reasonably relied on Defendants' representations that their nailers were an effective and safe tool for nailing, and were equipped with a "safety switch".

63. Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for and punitive damages according to proof, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages.

### FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

PLAINTIFF, FOR A FIFTH CAUSE OF ACTION AGAINST HITACHI KOKI U.S.A., LTD. AND KOKI HOLDINGS CO., LTD, ALLEGES AS FOLLOWS:

64. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

65. Defendants designed, tested, manufactured, packaged, labeled, sold and/or placed into the stream of commerce the nails, including the subject nailer.

66. The nailers were defective and unreasonably dangerous at the time they

1 left the possession and control of the Defendants, and they were expected to
2 reach, and did reach, Plaintiff in substantially the same condition as they were
3 in at the time they were designed, tested, manufactured, packaged, labeled and
4 sold, and/or otherwise placed into the stream of commerce by the Defendants.

5 67. Defendants expressly represented and warranted in their promotional
6 literature, on the product box and in store that the nailers, including the subject
7 nailer, included a safety that would prevent the nailer from misfiring and/or
8 firing two nails at once.

9 68. The failure of the safety that Defendants represented and warranted the
10 nailer was equipped with support breached express warranties.

11 69. Defendants' breach of the express warranty was the direct and proximate
12 cause of Plaintiff's injuries and damages.

13 **WHEREFORE,** Plaintiff demands judgment against Defendant for and
14 punitive damages according to proof, together with interest, costs of suit,
15 attorneys' fees, and all such other relief as the Court deems proper.  Plaintiff
16 reserves the right to amend the complaint to seek punitive damages.

## INJURIES & DAMAGES

18 70. As a direct and proximate result of Defendants' collective negligence and
19 wrongful misconduct as described herein, Plaintiff has suffered and will
20 continue to suffer physical and emotional injuries and damages including past,
21 present, and future physical and emotional pain and suffering as a result of the
22 incident. Plaintiff is entitled to recover damages from Defendants for these
23 injuries in an amount which shall be proven at trial.

24 71. As a direct and proximate result of Defendants' collective negligence and
25 wrongful misconduct, as set forth herein, Plaintiff has incurred and will
26 continue to incur the loss of full enjoyment of life and disfigurement as a result
27 of the incident. Plaintiff is entitled to recover damages for loss of the full

enjoyment of life and disfigurement from Defendants in an amount to be proven at trial.

72. As a direct and proximate cause of Defendants' collective negligence and wrongful conduct, as set forth herein, Plaintiff has incurred medical treatment expenses of over $400,000.00 and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the injuries he suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendants for his past, present and future medical and other expenses in an amount which shall be proven at trial.

73. As a direct and proximate cause of Defendants' collective negligence and wrongful conduct, as set forth herein, Plaintiff has incurred lost wages of almost $30,000.00 as a result of the injuries he suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendants for his past, present and future wage loss and other expenses in an amount which shall be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendants on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendants, general damages and special damages, including economic and non-economic, to compensate Plaintiff for his injuries and suffering sustained because of the use of the Defendants' defective Nailer;

D. That all costs be taxed against Defendants;

E. That prejudgment interest be awarded according to proof;

|   |   |
|---|---|
| 1 | F. That punitive and/or exemplary damages be awarded according to proof; |
| 2 | |
| 3 | G. That Plaintiff be awarded attorney's fees to the extent permissible under Federal and California law; and |
| 4 | |
| 5 | H. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief. |

 

**HARLAN LAW, P.C**

Dated: November 3, 2023

/s/ *Jordon Harlan*
Jordon Harlan, Esq. (CA #273978)
1245 Island Avenue
San Diego, CA 92101
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

*In association with*:

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: mjohnson@johnsonbecker.com
Email: akress@johnsonbecker.com

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

**HARLAN LAW, P.C**

Dated: November 3, 2023

*/s/ Jordon Harlan*
Jordon Harlan, Esq. (CA #273978)
1245 Island Avenue
San Diego, CA 92101
Telephone: (619) 870-0802
Fax: (619) 870-0815
Email: jordon@harlanpc.com

*In association with*:

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: mjohnson@johnsonbecker.com
Email: akress@johnsonbecker.com